# Wytheville

## MERCHANT'S ADMINISTRATOR V. SHRY.

### June 11, 1914.

1. CONVICTS—*Service of Process—Due Process.*—At common law a person convicted of a felony was disabled from suing, but was not exempt from being sued though in confinement, and hence process served upon him to appear and answer a demand in court constitutes due process of law under the fourteenth amendment of the constitution of the United States and the bill of rights of this State.

2. CONVICTS—*Service of Process—Common Law—Virginia Statute.*— The common law rule permitting one convicted of felony to be sued does not conform to the spirit of the present day, and as to convicts sentenced to the penitentiary for more than a year, the common law has been repealed, by implication, by the provisions of chapter 202 of the Code. Now all suits respecting the person or estate of such convict must be instituted in the name of his committee. Thus the rigor of the common law has been mitigated as to the convict, and as the committee may be appointed at the instance of any person interested, no injustice is done to other persons and no unnecessary delay is occasioned.

Error to a judgment of the Circuit Court of Loudoun county in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Cecil Connor* and *Charles F. Harrison,* for the plaintiff in error.

*E. E. Garrett,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Shry was indicted and found guilty of killing Leroy W. Merchant, and was sentenced to the penitentiary for a term of years. After his trial and sentence, and while he was in the jail of the county of Loudoun awaiting removal to the penitentiary, Merchant's administrator brought his action of trespass against him for having wrongfully caused the death of his decedent, and process to answer this suit was served upon Shry. Thereupon the defendant, by his counsel, appeared specially and moved the court to quash the process, which motion, after due consideration, the court granted, and the suit was dismissed; and thereupon a writ of error was awarded by this court.

There is no doubt that the plaintiff in the court below had a right of action under section 2902 of the Code against the defendant for having caused the death of his decedent, and the sole question now before us is whether or not process to answer that suit could be served upon the defendant; he being convicted of a felony at the time of service.

On behalf of the plaintiff in error it is contended that to maintain the judgment of the circuit court would be to deny to him a right plainly conferred by statute, as the law provides no other mode by which the right of action given him by section 2902 can be brought before the court; that at common law a felon's rights were greatly circumscribed, and he could not be heard to come into court as a plaintiff, but that the liability to be sued continued; and that at common law a felon was not in its complete sense *civiliter mortuus,* but *sub modo* and to a qualified extent only; that he was disqualified to be a witness and he could not bring an action or enforce a contract—in other words, that his privileges were greatly curtailed in consequence of his conviction, but that his liability remained unchanged. This view of the law

is maintained in *Flatner* v. *Sherwood,* 6 Johns. Chy. 129, where Chancellor Kent states, that "The strict civil death seems to have been confined to the cases of persons professed, or abjured, or banished the realm, and I do not find that it was ever carried further by the common law. The consequences of the civil death are illustrated in the case of entry into religion. The executor and the administrator administered upon the personal estate, as in the case of natural death, and the land descended to the heir. . . . A person attainted of felony, and adjudged to imprisonment for life, may have been regarded as dead in law, *sub modo,* but he certainly was not deemed and taken to be civilly dead, to all intents and purposes."

In *Guarantee Company* v. *National Bank,* 95 Va. 480, 28 S. E. 909, it is said, that "At common law a person convicted of felony, though disabled from suing, did not possess immunity from suit. And so, a citizen of Virginia serving a term of penal servitude in the penitentiary of another State, under a judgment of a Federal court in this State, may be sued in the courts of this State." Burk's Pl. and Pr. sec. 63, and notes.

Such being the common law, it is the law of Virginia, except in so far as it has been changed by statute; and this being the law, we think the process served upon one convicted of felony to appear and answer a demand in court is, strictly speaking, due process of law under the fourteenth amendment of the Constitution of the United States and a similar provision found in the bill of rights of this State.

We come next to inquire whether or not the common law has been changed so as to affect the case before us.

By section 4115 of the Code it is provided; "When a person, other than a married woman having no separate estate, is sentenced to confinement in the penitentiary

for more than one year, his estate, both real and personal, if any he has, shall, on motion of any party interested, be committed by the county, circuit, or corporation court of the county or corporation in which his estate or some part thereof is, to a person selected by the court, who after giving bond before the said court, in such penalty as it may prescribe, shall have charge of said estate until the convict is discharged from confinement.''

Section 4116 provides, that ''Such committee may sue and be sued in respect to debts due to or by such convict, and any other of the convict's estate, and shall have the same right of retaining for his own debt as an administrator would have.''

On behalf of the defendant in error it is contended that these sections supersede the common law, and that whatever right of action may have existed at common law against the felon must be pursued against his committee; while on behalf of the plaintiff in error it is conceded that this is true with respect to the debts due to or by such convict, but it is insisted that the statute law is silent with respect to his torts, and leaves the common law in full force and vigor as to them, and that the course pursued in this case must be maintained or he would be left remediless with respect to an undisputed right conferred upon him by section 2902.

To confine the operation of section 4116 to debts due to or by such convict leaves out of view and attributes no force or effect to the words ''and any other of the convict's estate,'' while it is an established rule of construction that every word in a statute should be given its full force and meaning. It will be observed that by section 4115 a committee may be appointed on the motion of any party interested, who shall have charge of the whole estate, real and personal, of the convict until

he is discharged from confinement. Such committee may sue and be sued in respect to debts due to or by such convict, and he may sue and be sued in respect to any other of the convict's estate. We do not think this language can be satisfied by applying it only to vindicate wrongs against the convict's estate—with respect to them the committee can certainly sue—but he can also be sued in respect to any other of the convict's estate—that is his estate other than the debts due to him.

We can conceive of no force to be attributed to the words which permit the committee to be sued with respect to the convict's estate other than the debts due by him, except that it meant to confer upon every person in interest, at whose instance the committee might be appointed, the right to bring a suit to establish whatever claim might be asserted, to be satisfied not only out of the debts due to the convict but out of any other portion of his estate, real or personal, which passed by operation of law to his committee. As to a debt due the committee he is given the same right to retain as an administrator would have, and by section 4117 the committee is required to allow (subject to the claims of creditors) a sufficient maintenance out of the convict's estate for his wife and family, if any.

The powers conferred upon the committee of a convict are strikingly similar to those given a committee of a lunatic. By section 1702 of the Code it is provided, that "The committee of an insane person shall be entitled to the custody and control of his person . . ., shall take possession of his estate, and may sue and be sued in respect thereto for the recovery of debts due to or from the insane person."

It will be observed that the order of the words used is different from that employed in section 4116. The latter section provides that the committee "may sue and

be sued in respect to the debts due by such convict, or any other of the convict's estate," while in section 1702 the order is as follows: ". . . shall take possession of his estate, and may sue and be sued in respect thereto and for the recovery of debts due to or from the insane person." But we apprehend that the change in order does not affect the meaning and that under both statutes the whole property of the lunatic or of the convict passes to the committee, and that he can sue and be sued with respect to any lawful demand against him and his property be subjected to its payment.

While we have seen that at common law a suit might be maintained against a convict, and service of process upon him would answer the demands of due process of law, it does not seem to conform to the spirit of the present day. Process at the institution of a suit is issued in order that the defendant may appear and defend. When it is served upon a convict he is notified to do that which is impossible. The law commands him to appear and defend his interests, and the law of the same State which notifies him to appear has him safe under lock and key so that he cannot appear. To say that this is due process of law is indeed to "keep the word of promise to the ear and break it to the hope."

In *Chapel* v. *Child,* 2 Cr. & Jor. R. 558, Baron Parke said, that "No judicial proceeding could deprive a man of any part of his property without giving him an opportunity of being heard." In *Bloom* v. *Burdick,* 1 Hill (N. Y.) 130, 37 Am. Dec. 299, Justice Bronson said: "It is a cardinal principle in the administration of justice, that no man can be condemned or divested of his right until he has had the opportunity of being heard; and if judgment is rendered against him before that is done the proceeding will be as utterly void as though the court had undertaken to act where the subject matter was not

within its cognizance." Mr. Justice Story, in his "Conflict of Laws" says, that "The common justice of all nations requires that no condemnation should be pronounced before the party had an opportunity to be heard." And Chief Justice Marshall, in *The Mary,* 9 Cranch 126, 3 L. Ed. 678, says, that the principle is "a maxim of natural justice and universal application;" while Mr. Justice Swayne, in *Underwood* v. *McVeigh,* 11 Wall. 267, 20 L. Ed. 80, uses the following language: "It is alleged that he (McVeigh) was in the position of an alien enemy, and hence could have no *locus standi* in that forum. If assailed there he could defend there. The liability and the right are inseparable. A different result would be a blot on our civilization and jurisprudence. We cannot hesitate or doubt on the subject. It would be contrary to the first principles of the social compact and of the right administration of justice." See *Underwood* v. *McVeigh,* and cases cited, 23 Gratt. (64 Va.) at p. 409.

In *Neale* v. *Utz,* 75 Va. 480, process was served upon a defendant in an action of debt, on the day on which he was convicted of a felony, but before the conviction had taken place, and in that action a judgment by default was obtained against the defendant while he was confined in the penitentiary, and it was held that the court having fairly acquired jurisdiction of the cause, the doctrine of relation does not apply so as to override and avoid the process. But Judge Staples dealing with the subject, while holding that a judgment so obtained cannot be collaterally attacked, shows very clearly, we think, that the whole proceeding offended his sense of justice. "Under such circumstances," he says, "the utmost that could have been exacted of the plaintiff was a suspension of all proceedings until the disability was removed, or the appointment of a committee to defend

the suit for the convict; and although neither course was pursued, the judgment is not void, but voidable, and cannot be assailed collaterally in a court of equity or elsewhere.''

In 10 Va. Law Register, at p. 849, there is an instructive article upon the subject under consideration, and the general views herein expressed are there maintained. Discussing the case of *Neale* v. *Utz, supra,* and referring especially to the suggestion made by Judge Staples that the utmost that could have been exacted of the plaintiff would have been the suspension of all proceedings, the article, continues: ''Suspension is therefore undoubtedly proper, for if abatement took place and then the defendant upon appeal were acquitted, a new suit would have to be brought; while on the other hand if suit is merely suspended, proceedings to final judgment may be had immediately upon removal of the disability.''

Now as the suggestion as to suspension is only made, we suppose, out of deference to the offended sense of justice at the idea of practically denying a man the right to make defense in a suit brought against him, which would be involved in summoning a convict confined in the penitentiary whose attendance at the trial would be a legal impossibility, on the other hand a postponement of the trial until the termination of the sentence would involve a great injustice to the plaintiff, and it was to meet these difficulties, involving probable, if not certain, injustice to plaintiff or defendant, that the law provided for the appointment of a committee to take charge of the convict's estate and to bring and to defend actions against him.

The sections which we have considered, however, do not in terms repeal the common law, and the only question to be considered in respect to this branch of the case is whether or not such a conflict between them can

be shown as to compel or authorize us to hold that the common law has been repealed by implication.

The whole statute law upon the subject is found in chapter 202 of Pollard's Code, 1904. Section 4115 provides, as we have seen, that "on the motion of any party interested" all the estate, both real and personal of a person sentenced to confinement in a penitentiary for more than a year shall be committed to a person selected by the court, who after giving bond in such penalty as may be prescribed shall have charge of said estate until the convict shall be discharged from confinement. This right is absolute and conditioned only upon the fact of conviction and sentence to confinement to the penitentiary for more than a year. It might be made by any person in interest, and the committee so appointed takes charge of the entire estate, real and personal, of the convict. By force of section 4116, such committee may sue and be sued in respect to debts due to or by such convict, and he may sue and be sued in respect to any other of the convict's estate—that is, (as we interpret the language) that he may bring any suit that is necessary for the protection or recovery of the convict's estate, and be sued with respect to any cause of action which may exist with respect to the convict. In other words, the capacity in the committee to sue and be sued is as broad and all-embracing as the interest referred to in section 4115 which authorizes a party to move for the appointment of a committee.

The committee, when so appointed, has the same power to retain for his own debt as an administrator would have. He is required to maintain the convict's family by section 4117, subject to the claims of his creditors; his wife, as superior to the right of creditors, is entitled to such portions of the profits of his estate as she would have had he died intestate. By section 4119 the com-

mittee is required to deliver such estate as he is liable for at the time to the convict on his discharge, or to his real and personal representatives on his death before being discharged. By section 4120, if any person so appointed refuse the trust, or fail to give bond as aforesaid, the court, on like motion, shall commit the estate to the sheriff of the county, or sergeant of the corporation, who shall be the committee, and he and the sureties in his official bond shall be bound for the faithful performance of the trust. By section 4121, the real estate of the convict may be sold, when necessary for the payment of his debts, in the same manner as the real estate of an insane person in the hands of a committee. This last section emphasizes the strong similitude which exists between the remedies which the law has provided for and against the property of lunatics and convicts.

We conclude, therefore, that a committee may be appointed on the motion of any party in interest; that by virtue of his appointment he takes charge of the whole estate, real and personal, of the convict; that as to such estate, real and personal, he may sue and be sued, either for the protection of the convict's interest in property or for the satisfaction of any claims which may exist against it and which may authorize the appointment of a committee; that it becomes the duty of the committee to maintain the convict's family, subject to the claims of his creditors; that provision is made for the sale of his real estate, as in the case of a lunatic; and that by appointing a responsible person to represent the convict in all litigation for and against him the rigor of the common law, which authorizes suits directly against a convict confined in a penitentiary, is mitigated in the interest of justice—of justice to the claimant, the satisfaction of whose demands might otherwise be postponed until the discharge of the convict, and justice to the convict, whose

rights and interests would be protected by a committee answerable upon his bond for the due discharge of his duty to the convict upon the termination of his sentence, or his representatives, real and personal, upon his death.

We have pointed out the strong similarity if not practical identity of the statute law providing for the appointment of a committee in the cases of a lunatic and of a convict; that their powers and duties are strikingly similar; and with respect to the lunatic it has been held in *Bird's Committee* v. *Bird,* 21 Gratt. (62 Va.) 712, that where there is a committee of a lunatic every suit respecting the person or estate of the lunatic must be in the name of the committee. Judge Staples, in the course of his opinion, says: "It is clear, when there is a committee, that every suit respecting the person or estate of the lunatic must be instituted in his name. But suppose there is no committee, or, as in this case, the demand is asserted against a committee whose powers have been revoked, and who is charged with violating his trust and converting the estate to his own use. Is the lunatic without remedy? It is said that another committee should be appointed. It may be that no one can be found willing to accept the office, or that the condition of the estate, or the conduct of the adverse party, requires the utmost promptness in the institution of legal proceedings."

Inasmuch as the statute law in the case both of the lunatic and of the convict confers the absolute right upon any person in interest to have a committee appointed, and further provides that in the event the person so selected fails to qualify, the duty may be imposed upon the sheriff, we do not appreciate the force of the suggestion of the learned judge. We can conceive of no such urgency as would prevent a resort to a proper court for the appointment of a committee, or in

default of the appointee's qualifying, for committing the estate to the sheriff. Certainly no such difficulty existed in this case. The plaintiff had a year within which to institute the suit, and within that time a committee to represent the convict could surely have been appointed. If a party has an absolute and unfettered right to protect his every interest by the appointment of a committee, and if all suits respecting the person and estate of a lunatic must be instituted in the name of the committee, and if there be a substantial similarity between the statutes providing for the appointment and regulating the duties and responsibility of committees for lunatics and convicts, then we feel that the case of *Bird's Committee* v. *Bird, supra,* is authority for the proposition that suits respecting the person or estate of a convict must be instituted in the name of his committee.

Upon the whole case, therefore, we feel constrained to the conclusion, that the statute sufficiently covers the entire subject under consideration, which results in an affirmance of the judgment complained of.

We regret that the conclusion reached will prevent a recovery and may thereby defeat the ends of justice in the particular case before us, but however that may be, we must declare the law as we find it written and comfort ourselves with the confident belief that in its results it will promote the ends of justice to all.

*Affirmed.*