292 S.E.2d 305 (1982)
Emily H. CARTER
v.
CAVALIER CENTRAL BANK AND TRUST COMPANY, INC.
Record No. 791554.
Supreme Court of Virginia.
June 18, 1982.
J. Madison Macon, Jr., Richmond, for appellant.
John N. Clifford, Williamsburg (W. Park Lemmond, Jr., Kevin M. McGowan, Marks, Stokes & Harrison, Hopewell, on brief), for appellee.
Before CARRICO, C. J., COCHRAN, POFF, COMPTON, STEPHENSON, and RUSSELL, JJ., and HARRISON, Retired Justice.
PER CURIAM.
Cavalier Central Bank and Trust Company, Inc., recovered a judgment against Emily Harrison Carter, C. Hill Carter, Jr., and Shirley H. Carter. Mrs. Carter has appealed, alleging that she was not indebted to the bank, that her sons Hill and Shirley were obligated as makers of the notes on which the bank sued, and that one of the notes had been materially altered.
In February 1974, Mrs. Carter received injuries which required her hospitalization, and thereafter her confinement in the John Randolph Nursing Home in Hopewell. By reason of her advanced age and impaired health, she became physically and mentally incapable of managing her estate.[1] Accordingly, in a proceeding had in the Circuit Court of Charles City County, Hill Carter was appointed her committee.
Mr. Carter testified that by August 1975, his mother's "cash money in savings and other things was depleted. There had to be some way to maintain her and pay her bills at John Randolph Nursing Home and pay her other expenses there." He said that at *306 that time he, as committee for his mother, arranged with appellee bank for a $16,000 line of credit to provide the necessary funds. A bank loan memorandum shows C. Hill Carter "for Emily H. Carter" as the "borrower." The memorandum recited that Carter requested the loan "to help support his mother who was in J. R. Hospital Nursing Home," and that the loan was to be of short duration because Carter planned to sell some timber and possibly some land to retire the debt.
Between August 29, 1975, and May 4, 1976, the committee borrowed from the bank the principal sum of $15,600.05 and executed eight notes evidencing the loans. C. Hill Carter, Jr., individually, guaranteed the payment of all the notes. One note, dated August 29, 1975, for $2000.00 was also signed by Shirley H. Carter. The proceeds of all notes were deposited in appellee bank to the credit of "C. Hill Carter, Jr., Committee of the Estate of Emily H. Carter."
The testimony of Hill Carter, and records introduced by him, established that the money derived from the loans was used to pay for the maintenance and support of Mrs. Carter in the nursing home. The trial court found that the notes were executed by the committee of Emily H. Carter in his fiduciary capacity, that the proceeds therefrom were deposited in a fiduciary account, and that the money was used to pay for Mrs. Carter's reasonable and necessary care in a nursing home. It entered judgment against Emily H. Carter in favor of the bank for the total principal amount of the eight notes, together with interest, attorney's fees, and costs. It also entered judgment in favor of the bank against C. Hill Carter, Jr., individually as guarantor, and against Shirley H. Carter, individually as guarantor, on the August 29, 1975 note which he executed.
Virginia Code § 37.1-132, in effect at all times pertinent to a decision of this case,[2] provided for the appointment of a committee for any person "who by reason of advanced age or impaired health, or physical disability, has become mentally or physically incapable of taking proper care of his person or properly handling and managing his estate...." Upon such appointment, the committee "shall have the same rights and duties which pertain to committees and trustees" appointed under Code § 37.1-128.03,[3] which provided for the appointment of committees for persons adjudicated legally incompetent, and Code § 37.1-134, which provides for the appointment of trustees for incompetent ex-service persons and their beneficiaries.
Code § 37.1-139 provides that "the fiduciary shall take possession of his ward's estate, and may sue and be sued in respect to all claims or demands of every nature in favor of or against his ward, and any other of his ward's estate, and he shall have the same right of retaining for his own debt as an administrator would have." Code § 37.1-142 requires the fiduciary to "take care of and preserve the ward's estate and manage it to the best advantage ..." and Code § 37.1-138 gives the fiduciary "custody and control of the person of his ward...."[4] *307 Title 26 concerns bonds and liabilities of fiduciaries and their responsibility to make due accounting of all funds which they handle in a fiduciary capacity.
The similarity of statutes providing for the appointment of committees for the various classes of incompetents was recognized by us in Dunn v. Terry, Administratrix, 216 Va. 234, 217 S.E.2d 849 (1975), and in Merchant v. Shry, 116 Va. 437, 82 S.E. 106 (1914). In Merchant, we held that under the statutes therein discussed, "the whole property of the lunatic or of the convict passes to the committee, and that he can sue and be sued with respect to any lawful demand against him and his property be subjected to its payment." 116 Va. at 442, 82 S.E. at 108.
An examination of the various statutes defining the duties, obligations, and responsibilities of committees and other fiduciaries discloses that while they are held to strict accountability, fiduciaries are nevertheless vested with the authority and power necessary to perform the role entrusted to them. The statutes recognize that there will be claims and demands against the ward, and against the ward's estate, for which a committee could be sued and required to defend. While the general rule is that a guardian is without power to bind a ward or his estate by contract, "it has been held in most cases where the question has arisen that a guardian or committee of an incompetent may incur obligations for necessaries, such as care and support of his ward, without the prior approval of the court." 39 Am.Jur.2d Guardian and Ward § 99 (1968). See also 39 C.J.S. Guardian and Ward § 76 (1976); and 44 C.J.S. Insane Persons § 85 (1945).
We think it clear that the General Assembly contemplated that under certain conditions the committee of an incompetent would of necessity be required to incur debts and obligations on behalf of his ward. In the management of property, the committee is required to exercise "the judgment of care under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs...." Code § 26-45.1. Mrs. Carter was entitled to have her estate, real and personal, used to provide her reasonable and comfortable care. To provide such care and thereby discharge his duty to his ward, the committee contracted a legitimate debt. Upon the exhaustion of her liquid assets and personal estate, the committee had no alternative but to look to her real estate and a sale of it or a portion thereof. Such a sale could be had only by order of court and, pending approval by the court, it was reasonable for the committee to borrow a sufficient sum to support his ward. A committee is required to discharge his duties with fidelity, and to use reasonable care in providing for the best interest of his ward. The final account of the committee of Mrs. Carter has been approved by the Commissioner of Accounts. The trial court found no breach of duty by the committee in this case.
Appellant argues that the loans made to the committee by the bank were made to him individually and because of the strength of his financial statement. The record discloses that Hill Carter is a director and stockholder in the bank and is a man of considerable wealth. The bank may have relied upon his financial responsibility, and that of his brother Shirley, rather than upon the real estate of Mrs. Carter when it made the loans to the committee. Nevertheless, the trial court found on credible evidence that the loans were in fact made to C. Hill Carter, Jr., in his fiduciary capacity. The notes executed by him indicated that he was acting as committee, and the money was deposited to his credit as committee. The fact that he personally guaranteed the payment of the loans in no way altered the fiduciary relationship in which he was acting. We think it clear that it was the intent of both the committee and the bank that Emily H. Carter and her estate be held primarily liable, and that Hill and Shirley Carter be held secondarily liable on the respective loans they guaranteed.
While appellant, in her brief, questions the evidence of the committee that the loans were obtained to provide her with necessities and alleges that Hill Carter either denied his mother the right to return *308 to her home or made it impossible for her to do so, there is no evidence in the record to substantiate this allegation. Neither is there evidence of any agreement ever having been made by Hill Carter and his mother by which the son agreed to be personally responsible for her support and care.
The alteration of one of the eight notes upon which the bank obtained judgment was made by an employee of the bank to conform it to the facts. It appears that in executing the note dated January 29, 1976, Hill Carter neglected to show that the loan was being obtained by and for the estate of Emily H. Carter, and that he was executing it as her committee. A bank employee, having knowledge of the realities of the transaction, inserted the wording "Estate of Emily H. Carter by" before Carter's signature and the word "Committee" after it. In so doing she merely corrected a mutual oversight. The proceeds from the note were deposited to the credit of C. Hill Carter, Jr., Committee of the Estate of Emily H. Carter, as were the proceeds of all other notes. Although improper and irregular, this action on the part of the bank did not "amount to a fraud on the appellant," as alleged in her brief. Further, the act of the employee was ratified by the maker of the note.
The judgment of the lower court is
Affirmed.
NOTES
[1] Mrs. Emily H. Carter died on July 27, 1981. See Carter v. Carter, 223 Va. ___, 291 S.E.2d 218 (1982).
[2] Section 37.1-132 was completely rewritten by the 1980 General Assembly. As amended it provides for the appointment of a guardian for a person who, by reason of advanced age or impaired health or physical disability, has become mentally or physically incapable of taking care of himself or his estate. At the time such appointment is made, the order of the court making the appointment shall (1) state the nature and extent of the person's incapacity, and (2) define the powers and duties of the guardian so as to permit the incapacitated person to care for himself and manage his property to the extent that he is capable. It further provides that a guardian appointed pursuant thereto shall, unless otherwise limited by the court, have the same rights and duties which pertain to committees, guardians, and trustees appointed under §§ 37.1-128.02, 37.1-128.1, or 37.1-134.
[3] Code § 37.1-128.03 was repealed by Acts 1980, c. 582.
[4] Code § 37.1-138 was amended by Acts 1980, c. 582, and now reads:

Subject to any conditions or limitations set forth in the order appointing him, the fiduciary appointed under the provisions of this chapter shall be entitled to the custody and control of the person of his ward when he resides in the State, and is not serving a term of penal servitude.