Robert Anthony WILLIAMS, Appellant,

v.

Crispus NIX, Warden of the Iowa State Penitentiary, Appellee.

No. 82–1140.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 11, 1984.

Decided Jan. 7, 1985.

Robert Bartels, Tempe, Ariz., for appellant.

Brent R. Appel and Thomas D. McGrane, Asst. Atty. Gen., Des Moines, Iowa, for appellee.

Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

ARNOLD, Circuit Judge.

When this case was last before us, we directed that a writ of habeas corpus be granted unless the state commenced proceedings to re-try Robert Anthony Williams, the petitioner, for murder. We held that the State of Iowa had not proved that the police acted in good faith when they obtained statements from Williams that led them to the body of the murder victim. Therefore, in our view, the fact that the body had been discovered could not be admitted into evidence on the theory that the police would inevitably have found it even absent Williams's incriminating statements. *Williams v. Nix,* 700 F.2d 1164 (8th Cir. 1983). The Supreme Court reversed, *Nix v. Williams,* —— U.S. ——, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), holding that the inevitable-discovery doctrine is a proper exception to the rule excluding evidence obtained through violations of the Sixth Amendment, and that the good or bad faith of the officers was irrelevant. *Id.* at 2510.

The Court remanded the case to us to consider petitioner's remaining arguments: (1) that his Sixth Amendment right to the effective assistance of counsel was violated when the state trial court refused to appoint out-of-state counsel of his choice; (2) that his right to an impartial jury was violated when the state trial court rejected his challenge for cause to a certain potential juror; (3) that the evidence of guilt was so clearly insufficient that no rational jury could have found beyond a reasonable doubt that he had committed deliberate and premeditated first-degree murder; (4) that jury instruction no. 8 deprived him of his right to be tried solely for the offense charged; and (5) that under the same jury instruction a verdict of guilty could be returned either if the petitioner had committed deliberate, premeditated murder, or if he had committed murder in the course of a felony, but no particular number of jurors were required to agree on one or the other species of murder.[1] The District Court[2] rejected each of these contentions, and, after carefully considering them, so do we.

We shall restate enough of the factual and procedural background to make the remaining issues clear. The victim, a ten-year-old girl, disappeared on Christmas Eve from a YMCA where she and her family were watching a wrestling match. Two days later, the petitioner was arrested, and, while being transported back to Des Moines from Davenport, Iowa, was urged by an officer to reveal where he had hidden the girl's body, so that she might be given a Christian burial.[3] As a result of the speech, Williams directed the police to the body, which was in a ditch near Des Moines. The victim had been sexually assaulted and had died from suffocation. Williams was tried on a charge of first-degree murder and convicted. The conviction was affirmed by the State Supreme Court, *State v. Williams,* 182 N.W.2d 396 (Iowa 1971). The conviction was vacated in a federal habeas proceeding, *Williams v. Brewer,* 375 F.Supp. 170 (S.D.Iowa 1974), aff'd, 509 F.2d 227 (8th Cir.1974), aff'd, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), which held that the Christian Burial Speech violated Williams's right to counsel. Williams was again tried and convicted. This time his statements were not used in evidence against him, but the fact that the

---

1. Williams also argues that it was constitutional error for the state court to refuse his request for a public-opinion poll to assist him in seeking a change of venue. We disagree. We do not believe this argument is sufficiently substantial to deserve further discussion.

2. The Hon. Harold D. Vietor, United States District Judge for the Southern District of Iowa.

3. The Christian Burial Speech can be found in *Nix v. Williams,* —— U.S. ——, 104 S.Ct. 2501, 2505, 81 L.Ed.2d 377 (1984).

body had been discovered, and the condition in which it was found, were introduced. The state court found that the police would have discovered the body even if Williams's damaging statements had not been made.[4] This second conviction was also affirmed by the State Supreme Court. *State v. Williams*, 285 N.W.2d 248 (Iowa 1979). The District Court denied habeas relief, *Williams v. Nix*, 528 F.Supp. 664 (S.D.Iowa 1981). This Court reversed the District Court, *Williams v. Nix*, 700 F.2d 1164 (8th Cir.1983), and, for the reasons stated above, the Supreme Court reversed us, *Nix v. Williams*, —— U.S. ——, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

We shall discuss each of Williams's remaining arguments in turn.

## I.

Petitioner argues first that the trial court erred in refusing to appoint Sheldon Otis, a California lawyer, as counsel in this case. Williams requested the appointment of both Otis and Gerald Crawford, an Iowa attorney. The Court did not appoint Otis, but it did appoint Crawford, along with two other Iowa attorneys, Roger Owens and John Wellman. The Court gave as its reason for not appointing Otis that "the defendant's interests will be better served and ... the pretrial matters and the orderly processing of this case will be better served if the defendant is represented by counsel located in Des Moines." Appendix, *State v. Williams*, Supreme Court of Iowa, 285 N.W.2d 248. Defendant then moved for substitution of counsel, arguing that his interests would be better served by out-of-state counsel, who would not be subject to community pressure. He also argued that the Court had informed his then counsel that if Williams had retained Mr. Otis at his own expense, then Mr. Otis would have been permitted to appear as counsel. The Court treated the Motion for Substitution of Counsel as a motion for

reconsideration of its decision not to appoint Mr. Otis. The Court denied the motion and held that defendant had no constitutional or statutory right to select appointed counsel.

Williams concedes that there is no absolute right to choose his own appointed counsel.[5] He contends, however, that an indigent has a qualified right to choose his own lawyer, drawn from the right to self-representation, *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and the right to appointed counsel, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). He says that in the absence of countervailing state interests the trial judge is obliged to grant counsel of defendant's choice.

A trial judge has discretion to decide whether to appoint a particular lawyer to the case. That the presence of out-of-state counsel might hinder the orderly processing of the case is a sufficient countervailing state interest to justify the court's decision not to grant counsel of defendant's choice. In *Morris v. Slappy*, 461 U.S. 1, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983), the Supreme Court stated that "[t]rial judges necessarily require a great deal of latitude in scheduling trials." In *Slappy*, the Court held that defendant's right to counsel was not violated when the trial court denied his motion to continue the trial until the attorney of his choice recovered from surgery. There was another attorney representing Slappy, but Slappy would not talk to or cooperate with him. The Court held that the right to counsel does not include the right to a "'meaningful relationship' between an accused and his counsel." *Id.* at 1617 (footnote omitted). See also *United States v. Solina*, 733 F.2d 1208, 1211–12 (7th Cir.1984), *cert. denied*,

---

**4.** There is fair support in the record for this finding of fact, and we agree with the State that Williams has not overcome the presumption that the finding was correct.

**5.** We note that there is also no absolute right to retained counsel of one's choice. See *Urquhart v. Lockhart*, 726 F.2d 1316, 1319 (8th Cir.1984).

— U.S. —, 105 S.Ct. 519, 83 L.Ed.2d 408 (1984).

▮ In reply, Williams points to the trial court's statement, apparently made during an informal conversation with counsel, that it would have permitted Otis to appear if he had been retained. This statement, the argument runs, proves that there was in fact no genuine concern that Otis's presence as appointed counsel would impede the orderly processing of the case. In addition, Williams argues, the statement appears to concede that he would have been allowed to use Otis as one of his lawyers if he had had the money to pay him. A state policy allowing criminal defendants with financial means to employ out-of-state counsel, while denying such a right to indigents, raises a serious equal-protection claim, petitioner asserts. This argument has force in the abstract, but we still do not believe that a sufficient infringement has been shown to justify setting aside this conviction. The absence of Otis as one of his lawyers occasioned absolutely no prejudice to Williams. We have read the entire record of the trial, and the lawyers who handled the case for Williams, including one whom he had requested by name, did everything that Otis could have done if he had been present, so far as we can tell. When counsel is denied outright, or when counsel has a conflict of interest, no showing of prejudice need be made, but we decline to extend this rule to the present situation. Here, counsel were appointed, including one of Williams's choice, and the absence of a particular named out-of-state lawyer had no practical impact on the trial. Although petitioner claims that out-of-state counsel would have been less vulnerable to "community pressure," he does not state that the lawyers who actually handled the case succumbed to or were affected by any such pressure.

## II.

▮ Williams claims that his challenge for cause to a member of the jury panel, a Mrs. Neuzil, should have been granted. He says that her voir dire showed that she could not be impartial. The defendant did not preserve this challenge in accordance with Iowa law, which requires that he specify the grounds upon which his challenge was based. *State v. Williams*, 285 N.W.2d 248, 267 (Iowa 1979), *cert. denied*, 446 U.S. 921 (1980). Therefore, review is precluded in this Court, absent a showing of cause and prejudice. *Graham v. Mabry*, 645 F.2d 603, 605 (8th Cir.1981).

▮ No "cause" has been shown. Williams's attorneys have filed affidavits stating that they thought they had made the reason for their challenge to Mrs. Neuzil clear, and that they did not know that the challenge had to be any more specific. According to the Supreme Court of Iowa, which is the final authority on such questions, counsel were mistaken in so believing, and their asserted unawareness of the applicable state rule of practice does not amount to "cause," *cf. Engle v. Isaac*, 456 U.S. 107, 134, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982), unless counsel's error was so egregious as to amount to ineffective assistance in violation of the Sixth Amendment. The mistake that was made here does not begin to rise to that level.

▮ In any event, even if cause and prejudice could be shown here, and we did reach the merits of this claim, we would reject it. The Supreme Court has recently held, *Patton v. Yount*, — U.S. —, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984), that the question of an individual juror's impartiality is one of historical fact. Our review of the state-court record leaves us with the distinct impression that it contains fair support for the state court's conclusion that Mrs. Neuzil was not so biased as to require that she be stricken for cause.[6]

## III.

▮ There is no merit to Williams's argument that the trial court erred in not directing a verdict on the charge of

---

**6.** We note, in addition, that Mrs. Neuzil did not actually serve on the jury that tried Williams.

Counsel for defendant removed her with a peremptory challenge. See 285 N.W.2d at 267.

premeditated and deliberate first-degree murder. Under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the standard in federal habeas corpus proceedings for a claim of insufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. at 2789. Applying that standard to the facts of this case, we hold that a reasonable trier of fact could have found that the victim, who was smothered, was killed deliberately and with premeditation.

■ "[P]remeditation and deliberation need not exist for any particular length of time." *State v. Fryer*, 226 N.W.2d 36, 41 (Iowa 1975). One way of circumstantially showing premeditation and deliberation is with evidence of the nature of the killing. *State v. Harrington*, 284 N.W.2d 244, 247–48 (Iowa 1979). A rational trier of fact could find that smothering requires a plan to kill. Smothering presumably would take some time, and the victim, if conscious, probably would be struggling. A rational juror could find that continuing to cut off the victim's air showed a plan to kill. If the victim became unconscious at some point and stopped struggling, a rational trier of fact could find that defendant planned to kill by continuing to suffocate her. There was no error in denying the motion for directed verdict.

### IV.

Petitioner next charges that jury instruction 8 deprived him of his right to be tried solely for the offense charged. The indictment charged that he "did with malice aforethought, premeditation, deliberation, and intent to kill, murder Pamela Powers ...." Instruction 8 provided:

You will first determine whether the Defendant has been proven guilty of Murder in the First Degree.

Before the Defendant can be found guilty of such crime, the State must prove each of the following propositions:

A. That on or about December 24, 1968, in Polk County, Iowa, the Defendant did wilfully and unlawfully kill Pamela Powers.

B. That such action on the part of the Defendant was done with malice aforethought.

C. That such action of the Defendant was done with deliberation, premeditation and with a specific intent to kill Pamela Powers; or,

Was done in the perpetration of the crime of Attempted Rape.

Defendant complains that under this instruction he could have been convicted on a felony-murder theory, although the indictment charged only premeditated murder.

■ We assume *arguendo* that this point is properly before us on habeas. We agree with the District Court that there was no prejudice because the felony-murder theory did not come as a surprise. It was tried in 1969 in the first trial, and the felony-murder instruction was submitted to the jury then. The omission of any express mention of felony murder from the indictment the second time did not affect any of Williams's substantial rights. His lawyers prepared a defense for both kinds of murder, and they vigorously resisted both theories at trial. The procedure was fair as a practical matter and not a violation of due process. In the federal courts such a de facto amendment of an indictment might raise serious problems, but the Supreme Court has held that the Fourteenth Amendment does not require the states to use grand-jury indictments at all, even to prosecute serious crimes. *Hurtado v. California*, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884).

### V.

Finally, Williams points out that instruction 8 was worded in the disjunctive. If read literally, it allowed the jury to convict defendant of first-degree murder if it found *either* a premeditated and deliberate killing, *or* a killing in the perpetration of the crime of attempted rape. But the instruction did not require that all the jurors, or even a majority of them, agree on one or the other of these kinds of murder. Thus,

it is logically possible for six of the jurors, say, to have found that Williams killed the little girl in the perpetration of attempted rape, but that he did not do so deliberately or with premeditation, while the other six jurors may have believed that Williams killed with premeditation and deliberation, but without attempting rape.

We assume that the Due Process Clause requires that state-court juries in criminal cases reach their verdicts either by unanimous vote or by some degree of agreement greater than a simple majority. The difficulty is that Williams's lawyers did not make this objection to instruction 8 in the trial court. One of counsel has now filed an affidavit stating that he was unaware at the time that the instruction in question would allow a nonunanimous verdict of guilty. Had this point occurred to him, he says, he would have made a timely objection on constitutional grounds to the instruction. We hold that this sort of omission is not "cause" under *Engle v. Isaac, supra.* The proposition that jury verdicts in criminal cases must be unanimous, or nearly so, is hardly novel, nor was it a new idea when this case was tried. The tools for raising this argument were readily available to counsel at the time of trial. The case therefore falls rather in the *Engle* category, than under the rule of *Reed v. Ross,* —— U.S. ——, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), which applies to constitutional claims that were so novel at the relevant time that their legal basis was not reasonably available to counsel. Nor do we believe that the omission was so serious as to constitute the ineffective assistance of counsel. Lawyers, like other people, are not perfect, and the ingenuity that diligent appellate counsel bring to a case long after the fact cannot be the only measure of what a lawyer should have done under the pressures of trial.

The rule of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), is grounded on the assumption that the criminal trial in the state courts should be the main event. To the fullest extent practicable, all of the arguments on both sides should be made in that forum. Collateral remedies, state and federal, exist primarily to address points that, for one reason or another, could not reasonably have been made at the trial itself or on direct appeal. If this principle is to be given proper play, permitting the state courts to handle, for the most part, their own business, there must be a rather large class of omissions on the part of trial counsel that will concern points of law that were sufficiently obvious to escape the designation "novel" under *Reed v. Ross,* but not so glaringly clear or crucially important that any reasonably competent attorney would have raised them. The present objection, we think, falls in this intermediate area covered by *Wainwright* and *Engle.* We hold, therefore, that trial counsel's procedural omission bars us from considering this objection to instruction 8 on federal habeas corpus.

This petition for collateral relief has been handled by appointed counsel. He has performed with great diligence and persistence, and the Court is grateful for his efforts.

The judgment of the District Court, dismissing with prejudice the petition for habeas corpus, is

Affirmed.