Richmond

ALVIN LEON RUFFIN

v.

COMMONWEALTH OF VIRGINIA

No. 0490-88-2

Decided June 12, 1990

COUNSEL

E. Taylor Everett, for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**DUFF, J.**—Alvin Leon Ruffin was convicted of operating a motor vehicle after having been declared an habitual offender, in violation of Code § 46.1-387.8. He was sentenced to one year imprisonment. Ruffin raises the following issues on appeal: (1) whether the order of January 20, 1983, adjudicating him to be an habitual

offender is void because the petition was filed directly against him, rather than a committee; (2) whether the order is void because the court appointed a guardian *ad litem* whom the defendant claimed had ineffectively represented him in a prior matter; (3) whether the order is void because the guardian *ad litem* failed to notify the court of the defendant's dissatisfaction with him; and (4) whether the order is void because the guardian *ad litem* failed to notify the defendant of his appointment, the date of the proceedings, and the result.

We review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it. *Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). Upon consideration of the record, the briefs and the arguments presented, we reverse.

## I.

Ruffin was a prisoner in the Sussex County jail in October, 1982. On October 18, 1982, an order, issued October 15, 1982, by the Circuit Court of Sussex County, was served upon him. It ordered him to show cause why he should not be deemed an habitual offender and barred from operating a motor vehicle in the Commonwealth. A copy of the order was sent to the penitentiary where Ruffin was later incarcerated.

Shortly thereafter, on December 6, 1982, Ruffin wrote a letter to Judge Lemmond of the Sussex County Circuit Court. In that letter Ruffin did not discuss the habitual offender case, but expressed the opinion that his attorney, James N. Barker, Jr., had not provided effective assistance of counsel in a previous case. Around that same time, Ruffin wrote Mr. Barker directly and informed him of his displeasure and that he did not want Barker to represent him in the habitual offender matter.

So far as the record indicates, this was the last time that Ruffin had any correspondence concerning this matter until June of 1985, when he learned of his status as an habitual offender while attempting to pay some Department of Motor Vehicle fines. For

reasons unknown, Ruffin made no effort to correct or clarify the situation at that time.

Over two years later, on September 9, 1987, Ruffin was indicted for operating a motor vehicle while an habitual offender. Ruffin then alleged that the order declaring him to be an habitual offender was "void because there was no notice to him of the date of the proceedings."

At the trial to determine the validity of the prior judgment, the evidence revealed that the original order served on Ruffin recited a hearing date of November 9, 1982. For reasons not set forth in the record the case was not heard at that time. The hearing ultimately was held on January 20, 1983.

The evidence further showed that, despite Ruffin's letters to Judge Lemmond and Mr. Barker, the Sussex County Circuit Court appointed James Barker guardian *ad litem* for Ruffin on January 11, 1983. At the hearing of January 20, 1983, over Barker's objections, Ruffin was declared an habitual offender. Mr. Barker then testified that there was no information in his files indicating that he ever notified Ruffin of the hearing, nor did he have any independent recollection that he contacted Ruffin to tell him the hearing date.

The court found that the notice of the defendant's adjudication was not served in compliance with Code § 8.01-297, and further, there was no evidence that the defendant had knowledge of the results of the proceeding. However, the court ruled that this did not void the adjudication of the defendant as an habitual offender and convicted him of operating a motor vehicle after having been declared such.

## II.

Code §§ 53.1-221 through 53.1-223 deal with the appointment of a committee. Section 53.1-223 states, in pertinent part, that "[n]o action or suit on any claim or demand shall be instituted against a prisoner after judgment of conviction and while he is incarcerated, except through his committee." The defendant argues that this language requires the suit in this case be instituted against his committee.

■ Sections 53.1-221 through 53.1-223, when viewed as a whole, provide for the management of a prisoner's tangible property. Section 53.1-221 provides that a prisoner's estate, both personal and real, may be committed to a committee. The other two sections, 53.1-222 and 53.1-223, outline the responsibilities of the committee.

■ The provisions of Code § 53.1-223 do not apply to an habitual offender adjudication. "Claim or demand" is intended to serve as a call for payment of an amount alleged to be due. The Virginia Supreme Court, in *Stamie E. Lyttle Co. v. County of Hanover*, 231 Va. 21, 341 S.E.2d 174 (1986), stated:

> A "claim" is defined as, *inter alia*, "an authoritative or challenging request," "a demand of a right or supposed right," or "a calling on another for something due or supposed to be due." Similarly, a "demand" is "a thing or amount claimed to be due."

*Id.* at 26 n.4, 341 S.E.2d at 178 n.4.

■ *Lyttle Co.* deals with the proper construction of Code § 15.1-554, governing presentation of claims or demands to a board of supervisors. However, absent an express indication from the legislature to the contrary, a consistent approach to statutory construction would attribute the same meaning to these words throughout the Code. When viewed in this light, it is clear that Code §§ 53.1-221 through 53.1-223 deal with tangible property, personal or real. There is no indication that the legislature intended for these sections to protect a prisoner's intangible right to drive on the highways of the Commonwealth. Accordingly, we find no merit in the defendant's position that a committee was necessary in the instant case.

## III.

The evidence shows that Ruffin sent letters to both the court and the guardian *ad litem*, prior to the hearing, advising them that he was unhappy with the services of Mr. Barker and requesting that he not be assigned as his guardian. The defendant contends, therefore, that the trial court abused its discretion by appointing Mr. Barker as his guardian and in disregarding his letter.

As well, the defendant argues that, when it became known to him that he did not desire his services, Mr. Barker had a duty to notify the court of his client's wishes and attempt to withdraw as guardian. We disagree.

■ The defendant cites no authority for the unique proposition that he is entitled to choose his own guardian *ad litem*. Code § 8.01-9 deals with the appointment of a guardian and sets forth minimum qualifications. The actual selection of the guardian, however, is left solely in the hands of the court. Accordingly, the court was entitled to review Ruffin's letter and accord it whatever weight it deemed proper. The court was not bound by the defendant's demands or requests. *See Hummel v. Commonwealth*, 219 Va. 252, 258, 247 S.E.2d 385, 388 (1978), *cert. denied*, 440 U.S. 935 (1979); *Williams v. Nix*, 751 F.2d 956, 959-60 (8th Cir. 1985), *cert. denied*, 471 U.S. 1138 (1985) (defendant not entitled to appointed counsel of his choice); *cf. Tuggle v. Commonwealth*, 230 Va. 99, 107, 334 S.E.2d 838, 843 (1985), *cert. denied*, 478 U.S. 1010 (1986) (defendant not entitled to court appointed psychiatrist of his choice). It does not appear from the evidence presented that the court abused its discretion in the selection of Mr. Barker.

The defendant also provides no authority for his argument that Mr. Barker, as guardian *ad litem*, had a duty to report to the court that the defendant was unhappy with his services. To hold that the guardian *ad litem* has a duty to report to the court every instance in which a client expresses displeasure with his services would unduly burden both the guardian and the Commonwealth. In the event that a defendant is unhappy with his guardian *ad litem* it is his burden to show that the guardian is unfit to fulfill satisfactorily his obligations. Ruffin attempted to convince the court of this fact in the letter discussed above. As noted, the court was entitled to determine what weight to give the defendant's allegations and proceed at its discretion. Accordingly, we find no merit in this argument.

## IV.

Finally, the defendant contends that the order was void because his guardian failed to maintain contact with him concerning his hearing or the result. We agree.

Virginia Code § 8.01-9(A) states as follows:

A suit wherein a person under a disability is a party de-
fendant shall not be stayed because of such disability, but the
court in which the suit is pending, or the clerk thereof, shall
appoint some discreet and competent attorney-at-law as
guardian ad litem to such defendant, whether such defendant
shall have been served with process or not; or, if no such at-
torney be found willing to act, the court shall appoint some
other discreet and proper person as guardian ad litem. Any
guardian ad litem so appointed shall not be liable for costs.
*Every guardian ad litem shall faithfully represent the estate
or other interest of the person under a disability for whom
he is appointed, and it shall be the duty of the court to see
that the interest of such defendant is so represented and
protected* . . . .

(emphasis added).

 As can be seen, the statute requires that an attorney be
appointed guardian *ad litem* if one can be found. If an attorney
cannot be found then "some other discreet and proper person"
may be appointed. In either case, the main requirement is that the
guardian be discreet, proper, and faithfully represent and protect
the interest of his charge. As such, a person who has been ap-
pointed guardian *ad litem* must, if possible, at a minimum discuss
the matter with the person under disability.

 Here the defendant expressly stated that he did not wish to
be involved with Mr. Barker. While the lower court had the dis-
cretionary right to dismiss this request and appoint Mr. Barker as
guardian *ad litem*, Mr. Barker did not have the right to assume
that he was the defendant's legal representative in any context
other than as guardian *ad litem*.

It is the duty of the guardian *ad litem* to represent the inter-
ests of those for whom he is appointed faithfully and exclu-
sively. He is not authorized to consent to anything except
mere matters of formal procedure, such as maturing or expe-
diting the cause. Such incapable defendants always and
throughout the litigation are in the position of objecting to
every step that is taken and everything that is done.

B. Lamb, *A Virginia Cause* 24 (1976).

Regardless of his status as a prisoner, Ruffin had a right to counsel of his choosing or, if he determined that it was in his better interests, to defend himself. Without knowledge of either the new hearing date or the fact that Mr. Barker had been appointed his guardian *ad litem*, the defendant was denied fundamental due process rights.

In circumstances such as those presented, where the person under disability is of sound mind, protection of the client's interests requires provision that he receive counsel of choice and safeguarding of his constitutional rights. Accordingly, Barker had an obligation to contact Ruffin, explain his situation, and determine what further steps were needed.

We also find that Mr. Barker failed to investigate thoroughly the facts surrounding the hearing. The duties of a guardian *ad litem* cannot be specifically spelled out as a general rule, but it is clear that the guardian has a duty to make a bona fide examination of the facts in order to properly represent the person under a disability. *See Norfolk Div. of Social Servs. v. Unknown Father*, 2 Va. App. 420, 425 n.5, 345 S.E.2d 533, 536 n.5 (1986) (guardian may be removed if he fails to faithfully represent his ward).

There is no evidence in the record showing that Mr. Barker ever contacted the defendant. Indeed, the only evidence available indicates that, insofar as the January 20, 1983, hearing is concerned, there was no contact between Mr. Barker and the defendant. Given this lack of communication with the defendant we are unable to conclude that Mr. Barker carefully examined the facts surrounding the case. Accordingly, he failed to comply with the mandate of Code § 8.01-9 in the discharge of his duties as guardian *ad litem*.

For the reasons stated, the order dated January 20, 1983, adjudicating Ruffin an habitual offender is declared void because of trial error in violating the constitutional due process rights of the defendant. If follows that the defendant's conviction in this case for operating a motor vehicle after having been declared an habitual offender cannot be maintained. Therefore, the judgement ap-

pealed from is reversed and dismissed.

Cole, J., concurred.

*Reversed and dismissed.*

Benton, J., concurring.

I concur in the judgment reversing the trial court, but for reasons different than those relied upon by the majority.

It has long been established that "suits respecting the person or estate of a [prisoner] must be instituted in the name of his [or her] committee." *Merchant's Adm'r v. Shry*, 116 Va. 437, 448, 82 S.E. 106, 110 (1914). The present committee statutes, Code § 53.1-221 *et seq.*, "are an outgrowth of an earlier statute designed to alleviate the consequences of the common law rule which permitted one convicted of a felony to be sued but not to appear in court to defend his case." *Almond v. Kent*, 459 F.2d 200, 202 (4th Cir. 1972). The committee statutes were intended *inter alia* to provide a mechanism for the prisoner to have a personal representative present in court acting on his or her behalf. To that end, Code § 53.1-223 unambiguously states that "[n]o action or suit on any claim or demand shall be instituted against a prisoner after judgment of conviction and while he is incarcerated, except through his committee." Although a prisoner may waive the appointment of a committee, *Dunn v. Terry*, 216 Va. 234, 239, 217 S.E.2d 849, 854 (1975), if the prisoner does not waive the appointment, the requirements of Code § 53.1-223 are mandatory. *See Shry*, 116 Va. at 448, 82 S.E. at 110; *see also Scott v. Nance*, 202 Va. 355, 357, 117 S.E.2d 279, 280 (1960).

I believe that the majority's conclusion that Code § 53.1-223 did not require the appointment of a committee for Ruffin is based upon a misinterpretation of a discussion concerning a "claim or demand" found in a footnote in *Stamie E. Lyttle Co. v. County of Hanover*, 231 Va. 21, 341 S.E.2d 174 (1986). The Supreme Court in *Lyttle Co.* concluded that the ordinary dictionary definitions of "claim" and "demand" did not encompass settlement offers. *Id.* at 26, 341 S.E.2d at 178. The Court, however, framed its references to the definitions to be "*inter alia*" and in so doing implicitly recognized that its references were not the exclusive definitions of those words. *Id.* at 26 n.4, 341 S.E.2d at 178 n.4. Nowhere in that footnote or in *Lyttle Co.* is it stated, as the majority state in this appeal, that whenever "claim" and "demand" appear in a statute

their meanings are to be limited to "a call for payment of an amount alleged to be due."

On the contrary, *Lyttle Co.* states that "[a] 'claim' is defined as, *inter alia*, 'an authoritative or challenging request,' 'a demand of a right or supposed right,' or 'a calling on another for something due or supposed to be due.' " *Id.* Nothing in that definition or in the definition of "demand," *see id.*, limits either term to a suit for money or tangible property. It should be noted that in *Lyttle Co.* the Supreme Court "narrowly construed" the words "claim" and "demand" only to give effect to the public policy which "favors the compromise and settlement of disputes without litigation." *Id.* at 26, 341 S.E.2d at 178. No such policy suggests that the coverage of the committee statute should be narrowed. Code § 53.1-223 contains an explicit restriction that "[n]o action or suit on *any* claim or demand *shall* be instituted against a prisoner . . . except through his [or her] committee." (emphasis added).

The filing of an information in the circuit court to require "the person named therein, to show cause why he [or she] should not be barred from driving a motor vehicle on the highways of the Commonwealth," Code § 46.2-354, is an "action or suit on . . . [a] claim or demand." Code § 53.1-223. Thus, the action was required to be instituted against Ruffin "through his committee." *Id.* Unlike the prisoner in *Dunn*, Ruffin did not engage his own attorney to defend him in the habitual offender action and was not "represented by counsel of his own choosing." *Dunn*, 216 Va. at 238, 217 S.E.2d at 853. Barker was appointed by the trial court to act as Ruffin's guardian *ad litem* pursuant to Code § 8.01-9. Barker did not act as Ruffin's legal counsel and his actions in the trial court cannot be deemed a waiver by Ruffin of his right to the appointment of a committee pursuant to Code § 53.1-221 *et seq.*

I concur with the majority that Barker's conduct as guardian *ad litem* did not adequately represent Ruffin's interest. Although I agree with the majority that Barker's inaction was sufficient to cause a reversal of the decision, I believe that the failure to sue Ruffin through a committee was fatal.