## CIRCUIT COURT OF ACCOMACK COUNTY

Commonwealth of Virginia

v.

Leroy Bailey

### June 12, 1992

### Case No. 92CRO55

BY JUDGE GLEN A. TYLER

The Defendant, Leroy Bailey, was adjudged to be an habitual offender by the Accomack County Circuit Court on April 4, 1988, pursuant to the statute. Va. Code Ann. § 46.2–351, et seq. (Repl. Vol. 1989, Cum. Supp. 1991). He was personally present at the hearing but gave no cause why he should not have been found an habitual offender. No guardian ad litem was appointed for Defendant, and he was not represented by counsel. He was served with a copy of the order of adjudication upon its entry.

The matter now before the court arises on an indictment of the Defendant by the Accomack County Grand Jury charging him with operating a motor vehicle on March 1, 1992, after having been declared an habitual offender, in violation of the habitual offender statutes.

The Defendant asks the Court to dismiss the indictment on the grounds that at the time of his adjudication as an habitual offender, he was an alcoholic, as defined. Va. Code Ann. § 37.1–1 (Cum. Supp. 1991). Defendant contends he was entitled to a guardian ad litem under Va. Code Ann. § 8.01–9 (Repl. Vol. 1984), which he was not afforded, thus rendering the adjudication void, citing *Moses v. Akers*, 203 Va. 130 (1961). At the hearing on the motion to dismiss the indictment, no evidence was produced that the Defendant was under the influence of alcohol at the time of the hearing in 1988 to declare him an habitual offender, and Defendant did not in the hear-

ing in 1988 claim to be or produce evidence that he was then an alcoholic.

The evidence produced by the Defendant on his motion included the testimony of two daughters of the Defendant that their father drank whiskey to excess nearly every day in 1988. Defendant also called a physician to testify, Dr. Lloyd J. Kellam, III. He is board-certified in internal medicine, including gastroenterology, and board-certified in cardiology. His practice over the previous five years included frequent treatment of alcoholics. Over the objection of the Commonwealth and after the Commonwealth elicited from the doctor on cross-examination that he did not know the technical statutory definition of an alcoholic, the Court declared the doctor to be an expert in the field of medicine, specifically internal medicine, with training and experience sufficient to allow him to give his opinion whether or not Defendant was an alcoholic. Dr. Kellam stated that he had the defendant as a patient for the first time in April of 1990 for treatment of pneumonia. The history he took from the Defendant included that the Defendant drank alcohol heavily. The doctor stated that his examination and treatment in 1990 revealed abnormalities in Defendant's liver function which, in his opinion, would take "years" of heavy drinking to develop. And Dr. Kellam said that Defendant experienced delirium tremens while in his care in the hospital in 1990, and that was due to long-term, heavy alcohol consumption, encompassing "years." It was Dr. Kellam's opinion that the Defendant was probably an alcoholic in April of 1988. Dr. Kellam finally opined that the consumption of alcohol per se was not "dangerous," but that prolonged heavy drinking of alcohol would be dangerous to the health of the drinker.

I. The Commonwealth complains that the Court should not have qualified Dr. Kellam as an expert physician able to testify and give opinions regarding whether or not a person is an alcoholic. The Commonwealth emphasizes the technicality of the matter, saying that it is incumbent upon the defendant to bring an expert who knows the legal definition and its application in cases like the one at bar. The Court does not agree. Alcoholism, generally, is not new or mysterious or generally encumbered with legal niceties, but its diagnosis in an individual is a matter on which a factfinder needs assistance. An expert need not be the most qualified person; it is sufficient if he has credentials enough to assist the factfinder in an area in which the

layman does not already have common knowledge sufficient to make a reliable judgment. *N. & W. Ry. Co. v. Anderson*, 207 Va. 567 (1966); *Rollins v. Commonwealth*, 207 Va. 575 (1966).

II. We assume, in this part of the opinion, only for the purpose of addressing the issue raised by the Defendant, without making a finding, that the requirements in Title 8.01 as to guardians ad litem apply to Title 46.2 and apply to adjudications of persons as habitual offenders. The question appears to be whether it would have been necessary for the Defendant to have been appointed a guardian ad litem in order for the Court to have jurisdiction in the habitual offender proceeding. If the Court had no jurisdiction, the judgment is subject to collateral attack. And this case is one involving a collateral attack, since Defendant is not attempting to annul the judgment as an habitual offender but to avoid its effect. *Sutherland v. Rasnake*, 169 Va. 257 (1937).

Regarding infants, the general rule of law according to the weight of authorities is that, where a court has jurisdiction otherwise, a judgment against an infant without the appointment of a guardian ad litem for him is voidable, not void. However, because of the explicit requirements in the Code of Virginia, § 8.01–9 (Repl. Vol. 1984), the rule in Virginia is that a personal judgment against an infant for whom no guardian ad litem has been appointed is void. *Kanter v. Holland*, 154 Va. 120 (1930). The appointment of a guardian ad litem must affirmatively appear from the face of the record, otherwise the judgment is void. *Moses v. Akers*, 203 Va. 130 (1961); *Commonwealth ex rel. Gray v. Johnson*, 7 Va. App. 614 (1989).

Regarding incompetents, the general rule according to the weight of the authorities is the same; that is to say, when a court has jurisdiction otherwise, a judgment against an incompetent person without the appointment of a guardian ad litem for him is voidable only, not void. 41 Am. Jur. 2d, *Incompetent Persons* § 122. And, generally, habitual drunkenness is included within incompetence. *Id.* § 7.

The reason the law denies the right collaterally to attack judgments, unless the Court is without jurisdiction of the subject matter or the parties or the things, is to protect the reputation and dignity of judicial proceedings. There is a public interest in the finality of adjudication that must be weighed against positive injustice to individuals. And the law provides for direct, as opposed to collateral, procedures to redress any positive injustice. 46 Am. Jur. 2d, *Judgments* § 622.

We are unable to find a Virginia case indicating whether Virginia would make a distinction between infants on the one hand and other incompetents on the other, or whether Virginia would follow the general rule regarding incompetents other than infants. However, the case of *Ruffin v. Commonwealth*, 10 Va. App. 488 (1990), regarding a prisoner, is helpful. There the Court declared the judgment, finding the defendant to be an habitual offender, to be void because his appointed guardian ad litem failed to have any contact with him concerning his trial or its results.

In Virginia, the failure to appoint a guardian ad litem for an infant in proper circumstances and the failure of an appointed guardian ad litem for a prisoner to at least discuss the matter with his ward cause a denial of fundamental due process rights, and a judgment in both such circumstances is void. It is reasonable, therefore, to conclude that the failure to appoint a guardian ad litem for an alcoholic in proper circumstances would be jurisdictional, thus permitting collateral attack. And this conclusion would apply to alcoholics, as defined, including adjudication as an habitual offender, if that is a statutory proceeding governed by Title 8.01 and its definitions, and if the definition is met.

III. Continuing the assumption that in a civil proceeding, statutory in nature, Title 8.01 applies to Title 46.2 but only for purpose of addressing the issue, we now turn to whether the statutes can be applied in this case to avoid the adjudication as an habitual offender and thus require dismissal of Defendant's indictment. If the statutes are read altogether, we see that in a civil statutory proceeding wherein an alcoholic, as defined, is a Defendant, the Court shall appoint a guardian ad litem for him and then proceed with the matter.

Although this Court is able to conclude that Dr. Kellam's evidence is competent and material, and that the Defendant was an alcoholic in April of 1988, there is no indication from the evidence that at that time, Defendant had been medically determined to be in need of medical or psychiatric care, treatment, rehabilitation, or counseling, and there is not sufficient evidence for this Court to now determine the Defendant to have been in such need. Furthermore, the evidence does not permit the Court to conclude that the Defendant was then or now is dangerous to the public or to himself through the use of alcohol. The dangerousness factor is not proved, as required by the definition of an alcoholic. Va. Code Ann. § 37.1–1 (Cum. Supp. 1991).

Accordingly, the adjudication of the Defendant as an habitual offender must stand, even though the Defendant was not appointed a guardian ad litem in that proceeding, even if the Defendant was then abusing himself by drinking alcohol frequently to excess.

By way of explanation, we are informed generally that every alcoholic who has been through the programs offered by Alcoholics Anonymous, unless he is just being perverse, will state openly that he is still an alcoholic, even if he has not had a drink of alcohol for several years. They believe an alcoholic can be a person who is addicted to alcohol but who is no longer drinking or a drunk or an active drinker. To carry the illustration further, suppose there is a defendant who was a drinking alcoholic for years, who had overcome his addiction to the extent that he has not drunk alcohol for several years, but who has three recent convictions unrelated to alcohol for driving after his license to drive has been suspended. Would he not be vulnerable to being declared an habitual offender if he is not appointed a guardian ad litem? The focus, therefore, must be upon the definition of an alcoholic and who falls within the protection of the statute requiring the appointment of a guardian ad litem. It does not appear that the legislature intended for the Court to appoint guardians ad litem to represent all alcoholics, reformed or otherwise, upon being cited as habitual offenders.

IV. A question not raised by counsel but which occurs to the Court upon reading the statutes is whether or not the definition of "person under a disability" in the Code of Virginia § 8.01–2 (Cum. Supp. 1991) is controlling upon Title 46.2. The Code says clearly "as used in *this* Title . . ." (Emphasis added.) The only conclusion that can be drawn is that the definitions apply to Title 8.01 and not Title 46.2. The definition of an alcoholic in Title 37.1 is specifically incorporated by Title 8.01. There may be many civil statutory proceedings outside of suits and actions under Title 8.01 in which persons who might be alcoholics may be parties. It is not thought that the legislature intended that guardians ad litem be appointed for all such persons in all such statutory proceedings. For example, would the Court, in a proceeding for the revocation of a lawyer's license under the Code of Virginia § 54.1–3935, be well-advised always to appoint a guardian ad litem for the attorney just in case he may be an alcoholic but refused to admit it? We think not, and the same applies to a driver's license revocation.

The Defendant's motion to dismiss the indictment is denied.