ALAN RAY GRAHAM, a/k/a

ALAN RAY KEEL

v.

COMMONWEALTH OF VIRGINIA

No. 1402-92-4

Decided May 3, 1994

Counsel

Charles J. Zauzig, III (Claire E. Keena; Nichols, Bergere & Zauzig, P.C., on brief), for appellant.

Eugene Murphy, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

Opinion

ELDER, J.—Alan Ray Graham was convicted in the trial court under Code § 46.2-357 of driving after having been declared an habitual offender. On appeal, he attempts to collaterally attack his underlying habitual offender adjudication, arguing that the adjudication was void for lack of jurisdiction (1) because, as an alcoholic, he was a person under a disability and was therefore entitled to the appointment of a guardian *ad litem*; and (2) because the proceedings were initiated in a county other than the one in which he resided at the time. For the reasons that follow, we affirm appellant's conviction.

On November 14, 1986, appellant was personally served while in the Henrico County Jail with an order issued by the Henrico County Circuit Court directing him to appear on December 16, 1986, to show cause as to why he should not be declared an habitual offender. Appellant failed to appear on that date, was adjudicated an habitual offender in his absence, and was served with a copy of the adjudication on February 3, 1987, in Hanover County.

On August 23, 1991, appellant was arrested for driving after having been declared an habitual offender, and he was subsequently indicted on the same charge. On February 10, 1992, he moved to dismiss on the ground that the habitual offender adjudication was void because it was not brought in his county of residence. The evidence showed that appellant's address on record with the Division of Motor Vehicles (DMV) was a Henrico County address which he provided when he applied for a Virginia driver's license. Although appellant moved to Hanover County when he separated from his wife in March 1986, he testified that he did not notify the DMV of that change because he expected to reconcile with his wife and return to the Henrico address and because his license was suspended at that time. He did, however,

provide a Hanover County address on the certificate of title he submitted to the DMV when he purchased a car on September 25, 1986. It is undisputed that appellant resided in Hanover County from March 1986, until some time after the habitual offender adjudication, although he was incarcerated periodically during that time period. The trial court ultimately ruled that the Henrico County Circuit Court had jurisdiction and that the habitual offender adjudication was valid.

Appellant filed a second motion to dismiss on April 22, 1992, and argued that his adjudication was void for want of jurisdiction on the ground that he was an alcoholic and had been declared an habitual offender without benefit of the appointment of a guardian *ad litem*. He presented testimony from Dr. Niazi, a psychiatrist, outlining appellant's history of alcohol abuse dating back to age fifteen; voluntary hospitalization for alcoholism and depression in August 1985, and June and September 1986; and involuntary hospitalization in October 1986. Dr. Niazi also testified that appellant suffered from severe alcoholism and during the period from November 3 to December 16, 1986, was dangerous to both the public and himself and was in need of medical psychiatric care, treatment, rehabilitation and counseling. Dr. Niazi also admitted on cross-examination that appellant would probably be able to understand the legal process if he were sober and not suffering from alcohol withdrawal. Appellant presented other extensive evidence of his continuing problem with alcohol in the form of seventeen other alcohol-related offenses and the testimony of his parents concerning his addiction. The trial court denied the motion to dismiss on the ground that the evidence showed appellant was in jail at the time of the declaration and failed to show that he was suffering from any sort of alcohol withdrawal. It concluded "consequently [that appellant was] not in need of a guardian *ad litem*."

Appellant was subsequently convicted of driving after having been declared an habitual offender.

## I.

Appellant contends first that the trial court erred in declaring him an habitual offender in the absence of a guardian *ad litem*. He argues that his adjudication is void because he was a person under a disability, as defined in Code § 37.1-1, at the time of his adjudication and a guardian *ad litem* was not appointed for him.

■ This case is governed by our recent decision in *Pigg v. Commonwealth*, 17 Va. App. 756, 441 S.E.2d 216 (1994) (en banc), in which we held that an habitual offender adjudication rendered against a person under a disability for whom no guardian *ad litem* has been appointed is merely voidable. Absent a showing that the offender was incapable of understanding the nature of the proceedings against him or of defending his interest, he may not collaterally attack the habitual offender adjudication.

The record in this case shows that appellant was personally served with a show cause order on November 14, 1986, while in jail. He was adjudicated an habitual offender in his absence on December 16, 1986, and was served with a copy of the adjudication on February 3, 1987. Although appellant presented evidence to show that he was an alcoholic at the time of the adjudication, his expert witness testified that appellant would have been able to understand the legal process if he were sober and not suffering from alcohol withdrawal. Appellant presented no evidence to show that, at the time he received the show cause order in jail, he was suffering from any sort of alcohol withdrawal which would have prevented him from understanding the nature of the proceedings against him. Accordingly, appellant's adjudication in the absence of a guardian *ad litem* is voidable only and may not be set aside in a collateral proceeding.

## II.

As to appellant's second assignment of error, we hold that the fact that his habitual offender adjudication was rendered in Henrico County when his actual place of residence was in Hanover County is not fatal to the court's jurisdiction.

■ At all times relevant to this case, Code §§ 46.2-352 and 46.2-353, respectively, provided as follows:

§ 46.2-352. . . . The Commissioner shall certify, from the Department's records, . . . [the necessary documents] to the attorney for the Commonwealth of the political subdivision in which the person resides *according to the records of the Department* . . . .

§ 46.2-353. . . . The attorney for the Commonwealth, [upon receiving those documents], shall forthwith file information

against the person named therein in the court of record having jurisdiction of criminal offenses in the county, city, or town in which the person resides. . . . In the event the accused is an inmate of a state correctional facility, jurisdiction for the proceedings shall be in the locality wherein the accused is confined.

(Emphasis added). As argued by the Commonwealth, these Code Sections must be read *in pari materia*, such that the phrase, "in which the person resides," as used in Code § 46.2-353, is read to include the modifier, "according to the records of the Department," as used in Code § 46.2-352. *See Prillaman v. Commonwealth*, 199 Va. 401, 405, 100 S.E.2d 4, 7 (1957); *Nelson v. County of Henrico*, 10 Va. App. 558, 561, 393 S.E.2d 644, 646 (1990). Indeed, the legislature subsequently amended Code § 46.2-353 to include this phrase in order to resolve any confusion or doubt.[1] Accordingly, the filing of the information in Henrico County was proper, because the last address reported by appellant to the DMV for purposes of the issuance of a driver's license was located in that county.[2] It is irrelevant that appellant's driver's license had been suspended at the time.

For these reasons, we affirm appellant's conviction under Code § 46.2-357.

*Affirmed.*

Duff, S.J.,* concurred.

---

[1] As amended in 1993, Code § 46.2-353 provides that:

The attorney for the Commonwealth, . . . [upon receiving certain documents], shall forthwith file information against the person named therein in the court of record having jurisdiction of criminal offenses in the county, city, or town *in which Department of Motor Vehicle records indicate to be the person's latest address.*

Code § 46.2-353 (emphasis added).

[2] The fact that appellant listed a Hanover County address on a certificate of title filed with the DMV is irrelevant, because the Habitual Offender Act deals with the revocation of an offender's driver's license and not with his registration or ownership of vehicles.

* Judge Charles H. Duff was appointed Senior Judge effective July 1, 1993, pursuant to Code § 17-116.01:1.

Benton, J., dissenting.

I disagree with the majority opinion's conclusion, and the decision of this Court in *Pigg v. Commonwealth*, 17 Va. App. 756, 441 S.E.2d 216 (1994) (en banc), that the failure to appoint a guardian *ad litem* for an alcoholic during a habitual offender proceeding pursuant to Code § 8.01-9 did not deprive the trial court of jurisdiction.[3] Because no guardian *ad litem* was appointed for Alan Ray Graham, an alcoholic as that term is used in Code § 8.01-2, his adjudication as a habitual offender is void. Therefore, for the reasons that follow, I would reverse Graham's conviction for driving after having been declared a habitual offender.

"Subject to the . . . limitations [specified in Article VI, Section I of the Constitution of Virginia], the General Assembly shall

---

[3] Code § 8.01-9 reads as follows:

A. A suit wherein a person under a disability is a party defendant shall not be stayed because of such disability, but the court in which the suit is pending, or the clerk thereof, shall appoint some discreet and competent attorney-at-law as guardian ad litem to such defendant, whether such defendant shall have been served with process or not; or, if no such attorney be found willing to act, the court shall appoint some other discreet and proper person as guardian ad litem. Any guardian ad litem so appointed shall not be liable for costs. Every guardian ad litem shall faithfully represent the estate or other interest of the person under a disability for whom he is appointed, and it shall be the duty of the court to see that the interest of such defendant is so represented and protected. And the court, whenever of opinion that the interest of such person requires it, shall remove any guardian ad litem and appoint another in his stead. When, in any case, the court is satisfied that the guardian ad litem has rendered substantial service in representing the interest of the person under a disability, it may allow such guardian reasonable compensation therefor, and his actual expenses, if any, to be paid out of the estate of such person; provided, if such estate is inadequate for the purpose of paying such compensation and expenses, all, or any part thereof, may be taxed as costs in the proceeding.

B. Notwithstanding the provisions of subsection A or the provisions of any other law to the contrary, in any suit wherein a person under a disability is a party defendant and is represented by an attorney-at-law duly licensed to practice in this Commonwealth, who shall have entered of record an appearance for such person, no guardian ad litem need be appointed for such person unless the court determines that the interests of justice require such appointment; or unless a statute applicable to such suit expressly requires an answer to be filed by a guardian ad litem. The court may, in its discretion, appoint the attorney of record for the person under a disability as his guardian ad litem, in which event the attorney shall perform all the duties and functions of guardian ad litem.

Any judgment or decree rendered by any court against a person under a disability without a guardian ad litem, but in compliance with the provisions of this subsection B, shall be as valid as if the guardian ad litem had been appointed.

have the power to determine the original and appellate jurisdiction of the courts of the Commonwealth." Va. Const. art. VI, § 1. Accordingly, it is a long established and fundamental principle that:

> In Virginia, we have no Courts, deriving their origin from Prescription, or Charter. They are all created by the legislative acts, defining their powers, and their jurisdictions.

*Thornton v. Smith*, 1 Va. (1 Wash.) 81, 84 (1792). Relying upon these principles, the Supreme Court unequivocally stated that courts in Virginia are not authorized to exert their power in a manner not specifically authorized by law. *Anthony v. Kasey*, 83 Va. 338, 341, 5 S.E. 176, 177 (1887). Thus, where the power of the circuit court is limited by the express or implied scope of a statute, the Supreme Court has ruled that the court's action must conform to the statute; otherwise, its judgment is void. *Id.*

A judgment rendered by a court that lacks jurisdiction over the subject matter or the parties is void. *Rook v. Rook*, 233 Va. 92, 95, 353 S.E.2d 756, 758 (1987). "And even though the court has jurisdiction of both the subject matter and the parties, a decree may nevertheless be void if 'the character of the judgment was not such as the court had the power to render, or [if] the mode of procedure employed by the court was such as it might not lawfully adopt.' " *Watkins v. Watkins*, 220 Va. 1051, 1054, 265 S.E.2d 750, 752-53 (1980) (quoting *Kasey*, 83 Va. at 340, 5 S.E. at 177). *See also Stroop v. Stroop*, 10 Va. App. 611, 616-17, 394 S.E.2d 861, 864 (1990); *Schoenwetter v. Schoenwetter*, 8 Va. App. 601, 604, 383 S.E.2d 28, 30 (1989); *Fitchett v. Fitchett*, 6 Va. App. 562, 565, 370 S.E.2d 318, 319 (1988). Thus, in those cases "in which mandatory requirements of the statute have been ignored, the jurisdiction of the court [is] thereby defeated, and the proceedings [are] rendered null and void for all purposes." *Brenham v. Smith*, 120 Va. 30, 32, 90 S.E. 657, 658 (1916).

Courts in Virginia are prohibited from proceeding in a suit where the defendant is a person with a statutory disability until a guardian *ad litem* is appointed in accordance with Code § 8.01-9. This Court recently held that the provisions of Code § 8.01-9(A) relating to the appointment of a guardian *ad litem* apply to adjudications rendered under the Habitual Offender Act, Code § 46.2-351 *et seq. See Pigg*, 17 Va. App. at 760, 441 S.E.2d at 217-18. Moreover, by explicit statutory language, the legislature

has mandated that a " '*[p]erson under a disability*' shall include: . . . an alcoholic as defined in Code § 37.1-1." Code § 8.01-2(6)(d). " 'Alcoholic' means a person who: (i) through use of alcohol has become dangerous to the public or himself; or (ii) because of such alcohol use is medically determined to be in need of medical or psychiatric care, treatment, rehabilitation or counseling." Code § 37.1-1.

In *Pigg*, the Court stated that "[b]ecause infancy is the only statutory disability for which the appointment of a guardian has expressly been held to be jurisdictional, . . . a judgment against a person who is under a disability because he or she is an alcoholic as defined under Code §§ 8.01-2(6)(d) and 37.1-1 is merely voidable." 17 Va. App. at 762, 441 S.E.2d at 220. That analysis ignores a significant fact. The jurisdictional imperative to appoint a guardian *ad litem* for infants was derived from the protection given by Code § 8-88, the predecessor to the current Code § 8.01-9. The failure to recognize that significant fact results in the creation of categories of disabilities under Code § 8.01-9 that have differing protections. These disparate categories are created by the Court and have no support in any rational interpretation of the statute.

I find no authority to support the conclusion reached in *Pigg* that the decisions of the Supreme Court require this Court to interpret Code § 8.01-9 so as to recognize distinctions based on the type of disability. Nothing in the Supreme Court's decisions or in Code § 8.01-9(A) creates such a dichotomy. Whatever distinctions between infants and other persons with disabilities that may appear in the cases are based upon the coverage of the statutes in existence at the time the cases were decided. In *Moses v. Akers*, 203 Va. 130, 132, 122 S.E.2d 864, 865 (1961), a case involving an infant, the Supreme Court held that if a guardian *ad litem* was not appointed for an infant as provided in former Code § 8-88, the resulting judgment was void. *See also Broyhill v. Dawson*, 168 Va. 321, 325, 191 S.E. 779, 781 (1937). The decisions holding that such judgments against infants are void in Virginia are contrary to the weight of authority in other states and were dictated by the statute that required the appointment of a guardian *ad litem* as a prerequisite to the court's exercise of jurisdiction. *See Kanter v. Holland*, 154 Va. 120, 122-23, 152 S.E. 328, 328 (1930).

At the time that *Kanter, Broyhill,* and *Moses* were decided the guardian *ad litem* statute read as follows:

> The proceedings in a suit wherein an infant or insane person is a party shall not be stayed because of such infancy or insanity, but the court in which the suit is pending, or the judge thereof in vacation, shall appoint some discreet and competent attorney-at-law as guardian ad litem to such infant or insane defendant, whether such defendant shall have been served with process or not; or, if no such attorney be found willing to act, the court, or the judge thereof in vacation, shall appoint some other discreet and proper person as guardian ad litem, but the person so appointed shall not be liable for costs. Any such guardian ad litem may also be appointed by the clerk of the court. Every guardian ad litem shall faithfully represent the interest or estate of the infant or insane person for whom he is appointed, and it shall be the duty of the court to see that the estate of such defendant is so represented and protected. And the court or the judge thereof in vacation, whenever of opinion that the interest of an infant or insane person requires it, shall remove any guardian ad litem and appoint another in his stead. When, in any case, the court or judge is satisfied that the guardian ad litem has rendered substantial service to the estate of an infant or insane defendant, it may allow him reasonable compensation therefor, and his actual expenses, if any, to be paid out of the estate of such defendant.

Code § 6098 and Code § 8-88.

The Court in *Kanter* expressly distinguished the rule in Virginia from the rule in other states and attributed the difference to the Virginia statute. The Court stated:

> It is well settled in this jurisdiction that unless the record affirmatively shows the appointment of a guardian *ad litem* to defend the interests of the infant, such appointment will not be presumed as a matter of law. Thus, no question of fact is involved in this controversy and the only question of law involved is whether or not a judgment obtained against an infant in a law action is a valid judgment when it appears that the infant was not represented in the litigation by a duly

appointed guardian *ad litem*. It must be conceded that "the weight of authority is to the effect that, where the court has otherwise jurisdiction, a judgment or decree rendered against an infant without the appointment of a guardian *ad litem*, while it may be erroneous and subject to be reversed or set aside, or be ground for a new trial, at most is only voidable, but not absolutely void; * * *."

An examination of a majority of the cases cited in the footnote to the above quoted section from Corpus Juris fails to show whether or not the question involved was affected by a statute similar to our statute, section 6098 of the Code. That section provides in part: "The proceedings wherein an infant * * * is a party shall not be stayed" because of the infancy of a defendant, but "the court shall appoint some discreet and competent attorney at law as guardian *ad litem*, whether such defendant shall have been served with process or not; or if no such attorney be found willing to act, the court * * * shall appoint some other discreet and proper person as guardian *ad litem*. * * * Every guardian *ad litem* shall faithfully represent the interests or estate of the infant * * * for whom he is appointed, and it shall be the duty of the court to see that the estate of such defendant is so represented and protected."

Whatever may be the rule of decision elsewhere, we are of opinion that the law in Virginia is that a personal judgment rendered against an infant for whom no guardian *ad litem* has been appointed is void.

*Kanter*, 154 Va. at 122-23, 152 S.E. at 328-29 (citations omitted).

In *Broyhill*, a case that referred to the principle enunciated in *Kanter*, the Supreme Court stated that "a personal judgment rendered against an infant for whom no guardian *ad litem* was appointed is . . . a nullity and void *because a cardinal requirement of the law was ignored in the proceedings." Broyhill*, 168 Va. at 325-26, 191 S.E. at 781 (emphasis added). Significantly, both infants and insane persons, unless represented by a guardian *ad litem*, were given protection from suit by former Code § 8-88. Thus, the failure to appoint a guardian *ad litem* for a party when the statute required that one be appointed rendered any subsequent judgment against that party null and void because a "cardi-

nal requirement of the law was ignored." *Id.* at 326, 191 S.E. at 781. Nothing in these decisions suggests that the Supreme Court's grant of protection to persons with a statutory disability was grounded in a distinction that the Court created to give heightened protection to one subcategory of the class of persons protected. The Court's decisions are explicitly based on a finding of a jurisdictional defect that arose from the failure to apply the statute to the protected class.

In developing its thesis that the Supreme Court has recognized distinctions in disabilities, the majority and the Court in *Pigg* misread the holding in *Dunn v. Terry*, 216 Va. 234, 217 S.E.2d 849 (1975). In *Dunn*, the question before the Court was whether the trial judge erred in refusing "to vacate the judgment on the ground that the judgment was void and unenforceable because at the date of its entry no *committee* had been appointed for [Dunn]." *Id.* at 235, 217 S.E.2d at 851 (emphasis added). "Dunn contend[ed] that the language of Code §§ 53-305 and 53-307 (Repl. Vol. 1974) mandate[d] the appointment of a committee for a convict before a valid judgment may be entered against him." *Id.* at 235-36, 217 S.E.2d at 851 (footnotes omitted). Therefore, Dunn sought to have the Supreme Court grant him protection similar to that conferred by Code § 8-88 upon the theory that the appointment of a committee was analogous to the appointment of a guardian *ad litem* under Code § 8-88 and, thus, was a prerequisite to the jurisdiction of the trial court. He specifically argued "that the General Assembly, by enacting Code § 8-88.1, intended to equate guardians *ad litem* with committees as to convict defendants." *Id.* at 236, 217 S.E.2d at 852.[4] The Supreme Court expressly rejected the argument that Code § 8-88.1, which was not in existence in 1971 (the year judgment was entered against Dunn), applied to Dunn's circumstances. *Id.* at 236-37, 217 S.E.2d at 852. The Supreme Court noted that Code § 8-88, which

---

[4] Code § 8-88.1, which was enacted in 1972, a year after judgment was entered against Dunn, read as follows:

Notwithstanding the provisions of § 8-88 or any other provision of law to the contrary, in any suit wherein an infant, insane person or convict is a party, and such infant, insane person or convict is represented by a duly licensed attorney-at-law, who has entered an appearance for him, no guardian ad litem shall be appointed, unless the court determines that the interests of justice require such appointment. Any judgment or decree rendered by any court against such infant, insane person or convict under the provisions of this section shall be as valid as if such appointment had been made.

was in existence when judgment was entered against Dunn, contained "no reference to convicts." *Id.* at 236, 217 S.E.2d at 852. Thus, the Supreme Court "perceive[d] no legislative intent . . . that § 8-88.1 should apply to §§ 53-305 *et seq.*, pertaining to the appointment of committees for convict defendants." *Id.* at 237, 217 S.E.2d at 852.

In *Pigg*, the Court erred in relying upon *Dunn*, a case involving a convict's committee, for principles concerning guardian *ad litem* under Code § 8.01-9.[5] The *Dunn* decision did nothing more than decide that the provisions of Code § 53-307 (the former committee statute), which governed Dunn's case, were procedural. 216 Va. at 240, 217 S.E.2d at 854. After rejecting Dunn's attempt to gain the protections available under Code § 8-88, the Supreme Court noted that the judgment of which Dunn complained was entered in a suit that was filed against Dunn before he was convicted and at a time when no committee was required. The Supreme Court found "nothing in [the Virginia] statutes or rules to deny a convict, already within the civil jurisdiction of the Court at the time of his felony conviction and incarceration, the privilege of waiving the appointment of a committee and proceeding to trial and judgment in a law action in which he is represented by counsel of his own choosing." *Id.* at 238, 217 S.E.2d at 852-53. That decision did not hold by implication that a violation of Code § 8-88, the predecessor statute to Code § 8.01-9, was not jurisdictional and did not affect substantive rights. Indeed, the Supreme Court stated unequivocally in *Dunn* that "failure to comply with the provisions of [Code] § 8-88 [the predecessor to Code § 8.01-9(A)] was a *jurisdictional defect* that could not be waived." 216 Va. at 236, 217 S.E.2d at 852 (emphasis added).

Furthermore, *Taylor v. Taylor*, 159 Va. 338, 165 S.E. 414 (1932), a case also relied upon in *Pigg*, was not decided under the guardian *ad litem* statute. The appellant in *Taylor* sought to set aside a divorce procured while she was insane and argued that the divorce decree was void on equitable grounds. Although the Court did not rule that the decree was void, the Court set aside the decree for fraud. *Id.* at 354, 165 S.E. at 419. Significantly, the deci-

---

[5] Indeed, now, as when *Dunn* was decided, the General Assembly has enacted specific legislation concerning committees for convicts. *See* Code §§ 53.1-221 to -228. *See also Ruffin v. Commonwealth*, 10 Va. App. 488, 496-97, 393 S.E.2d 425, 430-31 (1990) (Benton, J., concurring).

sion of the Court was based upon equitable considerations only, *see id.*, and did not discuss the effect of Code § 6098, which was then in existence and addressed the "[a]ppointment of guardian ad litem for infant or insane defendant [in] proceedings in a suit wherein an infant or insane person is a party." Code § 6098.

Code § 8.01-9, as it currently exists, combines the provisions of former Code §§ 8-88 and 8-88.1. *See* Code § 8.01-9 (Revisers' Note). When the former statutes were combined to create the current version of Code § 8.01-9, the legislature expanded the scope of the statute to include within its coverage a larger defined class of persons who are deemed to be "persons under a disability." Code § 8.01-9 (Revisers' Note). That class of persons includes alcoholics as defined in Code § 37.1-1. When the legislature expanded the scope of the statute to encompass other disabilities, the legislature did not mandate disparate treatment for various disabilities or create subcategories of disabilities under Code § 8.01-9. Those decisions from the Supreme Court that hold that the jurisdiction of the circuit court is "defeated, and the proceedings [are] rendered null and void for all purposes" when mandatory requirements affecting the authority of the court are ignored, *Brenham*, 120 Va. at 32, 90 S.E. at 658, addressed constraints imposed by operation of the statute and not judge-made constraints imposed because of distinctions in types of disabilities.

The *Pigg* decision also suggests that the Court may in future cases create another subcategory of the disabilities. The Court's holding states that "failure to appoint a guardian *ad litem* for an alcoholic in accordance with the provisions of Code § 8.01-9(A), *without more*, renders the judgment voidable." 17 Va. App. at 760, 441 S.E.2d at 219 (emphasis added). Furthermore, in a footnote, the Court states, "[w]e do not address the situation in which the record establishes that the defendant, because of a disability, was actually incapable of understanding or participating in the proceeding." *Id.* at 763 n.8, 441 S.E.2d at 221 n.8. It thus appears that in a case in which something "more" is found the Court may give some recognition to the Supreme Court's holdings that failure to abide by the statutory mandate creates a jurisdictional defect. In reserving for another day the question of the validity of an adjudication of an alcoholic who "was actually incapable of understanding or participating in the proceeding," *id.*, the Court implicitly suggests, however, that in addition to creating disparate

results for different disabilities the Court will also consider disparate results for subcategories of the same disability. Nothing in the statute sanctions such a result.

The Supreme Court has clearly stated that a circuit court's "failure to comply with the provisions of [Code] § 8-88 [the predecessor to Code § 8.01-9] was a jurisdictional defect that could not be waived" and that rendered the judgment void. *Dunn*, 216 Va. at 236, 217 S.E.2d at 852. *See also Broyhill*, 168 Va. at 325-26, 191 S.E. at 781. The legislature's expansion of former Code § 8-88 to include the provisions of former Code § 8-88.1 and its recodification of the two statutes into the current Code § 8.01-9 did not change the underlying principle upon which the Supreme Court grounded its decision. Indeed, the legislative decision to combine the two statutes into one statute gives weight to the Court's interpretation by retaining the statutory mandate to appoint a guardian *ad litem* for persons under disability and in expanding the class of disabilities. "[W]here the General Assembly acts in an area in which [the Supreme] Court has already spoken, it is presumed to know the law as the Court has stated it and to acquiesce therein." *Burns v. Board of Supervisors*, 227 Va. 354, 360, 315 S.E.2d 856, 860 (1984). Furthermore, "[t]his Court is bound to follow the unequivocal statutory precedent." *Fortune v. Commonwealth*, 12 Va. App. 643, 650, 406 S.E.2d 47, 50 (1991).

This is a case in which a circuit court acted under a statutory scheme created by the legislature to declare Graham a habitual offender and "in which mandatory requirements of the statute have been ignored." *Brenham*, 120 Va. at 32, 90 S.E. at 658. This is not a case in which it is claimed that the court applied the facts and made an error upon a question of law in its ultimate decision to declare Graham a habitual offender. *See Robertson v. Commonwealth*, 181 Va. 520, 537, 25 S.E.2d 352, 359 (1943). When determining, or failing to determine, the meaning of laws pertaining to the circuit court's own power and jurisdiction to proceed and to decide the case, the circuit court was not at liberty to act in excess of the mandatory provision of Code § 8.01-9. *See Seamster v. Blackstock*, 83 Va. 232, 2 S.E. 36 (1887). When it acted in excess of the statute, the decree was void and subject to collateral attack. *Id*; *see also Bray v. Landergren*, 161 Va. 699, 712-13, 172 S.E. 252, 256 (1934); *Brenham*, 120 Va. at 32, 90 S.E. at 657-58.

The evidence in this case proved that Graham was a person under a disability, as that term is defined in Code §§ 8.01-2(6)(d) and 37.1-1; that Graham was adjudicated a habitual offender while he was under the disability; and that a guardian *ad litem* was not appointed when Graham was so adjudicated. For the reasons that I have stated, I would hold that the circuit judge's failure to appoint a guardian *ad litem* for Graham at the habitual offender proceeding was a jurisdictional defect and rendered the judgment void.